UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JAMES C. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:12-CV-404 |
| | ) | (VARLAN/GUYTON) |
| SHERMAN FINANCIAL GROUP, LLC, | ) | |
| LVNV FUNDING, LLC, | ) | |
| RESURGENT CAPITAL SERVICES, L.P., | ) | |
| TOBIE GRIFFIN, and | ) | |
| BUFFALOE & ASSOCIATES, PLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil action is before the Court on two motions: (1) the Defendants' Joint

Motion for Summary Judgment [Doc. 16]; and (2) Plaintiff's Amended Motion for Partial

Summary Judgment Against Defendants LVNV Funding, LLC, Tobie Griffin, and

Buffaloe & Associates, PLC [Doc. 22].[1]  In their motion, defendants Sherman Financial

Group, LLC ("Sherman"), LVNV Funding LLC ("LVNV"), Resurgent Services, L.P.

("Resurgent"), Tobie Griffin ("Griffin"), and Buffaloe & Associates, PLC ("Buffaloe")

(collectively "defendants"), seek dismissal of all of plaintiff's claims arising under the

Fair Debt Collection Practices Act ("FDCPA"), for failure to create a genuine issue of

material fact.  Plaintiff James White, in turn, moves for partial summary judgment on

---

[1] Plaintiff had previously filed a motion for summary judgment [Doc. 20] which was
terminated and replaced by the amended motion currently before the Court [Doc. 22].

several of his FDCPA claims.  Both motions have been fully briefed by the parties.[2]  The

Court has reviewed the parties' arguments, in light of the relevant case law and the

evidence of record.  For the reasons discussed herein, defendants' motion [Doc. 16] will

be granted in part and denied in part, and plaintiff's motion [Doc. 22] will be denied.

## I.     Background

Plaintiff commenced this action on August 1, 2012, asserting "violations of the

Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA")" [Doc. 1 ¶ 2].

Plaintiff is alleged to have incurred a credit card debt, owing to Citibank [*Id.* ¶ 10].  At

some point, plaintiff defaulted on the credit card debt, and the debt was eventually

assigned to defendants [*Id.* ¶ 11].  Plaintiff alleges that defendants Sherman, LVNV, and

Resurgent operate as a "debt buying enterprise," in which Sherman exercises decision-

making authority, LVNV acts as holding company for purchased debt-portfolios, and

Resurgent acts as servicer on collection accounts [*Id.* ¶ 12].

On August 3, 2011, defendant Buffaloe & Associates, PLC ("Buffaloe"), who

regularly collects debt on behalf of LVNV, filed a civil warrant and sworn affidavit in

General Sessions Court for Knox County and served it on plaintiff at his Seymour,

Tennessee address [*Id.* ¶ 27].  The civil warrant stated that the amount due on the debt

was for "the principal amount of $5,387.93, plus pre and post judgment interest accruing

---

[2] Defendants note in an objection to plaintiff's response that plaintiff's response to defendants' motion for summary judgment was untimely, moving to strike the response [Doc. 30].  The Court notes, however, that the Court had not yet ruled on the motion, and that defendants were not prejudiced by the delayed filing, as they were able to file a response.  Accordingly, the Court will **DENY** defendants' motion to strike contained within the objection [Doc. 30].

at the statutory rate of 10%, and court costs of this cause of $181.50" [Doc. 1-1].

Likewise, the sworn affidavit, filled out by Griffin, an authorized representative of

LVNV, stated that plaintiff owed $5,387.93 as of September 30, 2010 [*Id.* at 3]. While

plaintiff alleges that the civil warrant and attached affidavit were the first

communications he had received from defendants, defendants contend that Buffaloe,

acting on behalf of LVNV, sent a demand letter to plaintiff on or about June 29, 2010

informing plaintiff of his right to dispute the debt, and noting that it was an attempt to

collect on a debt [Doc. 19]. Plaintiff denied the existence of the debt, and LVNV

eventually dismissed its civil warrant. Plaintiff alleges that defendants' actions violated

numerous provisions of the FDCPA in the following ways: (1) making false, misleading

representations in connection with the collection of a debt in violation of 15 U.S.C. §§

1692e(2)(A), 1692e(2)(B), 1692e(8), 1692e(10); (2) taking action which cannot legally

be taken by failing to obtain proper licensure in compliance with Tennessee law, in

violation of 15 U.S.C. §§ 1692e, 1692e(5), 1692f and 1692f(1); (3) failing to make the

requisite disclosures in the sworn affidavit attached to the civil warrant, in violation of 15

U.S.C. §§ 1692e(11) & 1692g(a)(3)-(5); and (4) filing the collection lawsuit in an

improper venue in violation of 15 U.S.C. § 1692i(a)(2). Plaintiff also asserts that LVNV

is liable for the acts and omissions of Buffaloe under a theory of *respondeat superior*.

## II.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is

proper "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed

4

is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

Congress enacted the FDCPA in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The court is required to analyze alleged FDCPA violations "through the lens of the 'least sophisticated consumer.'" *Gionis v. Javitch, Block & Rathbone, LLP*, 238 F. App'x 24, 28 (6th Cir. 2007) (quoting *Smith v. Transworld Sys. Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992)). The least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Colomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id*. at 1318 (internal quotation marks omitted). It also "protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id*. at 1320.

## A.  Defendants' Motion for Summary Judgment

Defendants filed a joint motion for summary judgment seeking dismissal as to all of plaintiff's claims.   While plaintiff submitted a response, plaintiff devotes his arguments therein to the violations of Griffin, LVNV, Resurgent, and Buffaloe.  Plaintiff does not discuss the liability of Sherman, and only mentions Sherman as a party at the onset of his response brief.   As an initial matter, then, the Court finds that summary judgment is appropriate for Sherman as to all of plaintiff's claims, given that plaintiff has failed to respond to this aspect of defendants' motion and, in addition, has not shown a genuine issue of material fact exists with respect to Sherman.  *See* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought.").

### 1.  Filing of Civil Warrant and Sworn Affidavit

The remaining defendants first move for summary judgment on plaintiff's claims arising under 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(5), 1692e(8), e(10), 1692f, and 1692f(1) related to defendants' act of filing of the civil warrant and affidavit itself.  As characterized by plaintiff in his response, plaintiff's "fundamental claim for this violation is that [d]efendants filed the collection lawsuit without possessing any competent evidence they could use to establish that [p]laintiff owed a debt to LVNV, and knowing that they did not intend to obtain such evidence . . ." [Doc. 29 at 8].  In support of their motion, defendants note that it is not a violation of the FDCPA by filing a collection lawsuit without having the immediate means to prove up the debt.  Defendants

6

also note that in the affidavit attached to the civil warrant, Griffin, as representative for LVNV, recounts the manner in which the debt was validated, and that, although the business records of LVNV were not submitted along with the affidavit, Griffin testified that he had reviewed the records to verify the debt. Because plaintiff cannot show there is a genuine issue of material fact with respect to a violation of any of these subsections, defendants contend that they are entitled to summary judgment.

15 U.S.C. § 1692e prohibits the use of "any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt." Section 1692e(2) prohibits the false representation of the character, amount, or legal status of a debt, as well as the false representation of services rendered or compensation received by any debt collector. Section 1692e(5) prohibits a threat to take any action that cannot legally be taken or that is not intended to be taken, while § 1692e(8) prohibits communicating or threatening to communicate to any person credit information which is known or which should be known to be false. Section 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt. Section 1692f prohibits the use of unfair or unconscionable means to collect or attempt to collect on a debt, including attempting to collect on amounts not expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

Plaintiff argues that its claim is not based upon the allegation that defendant did not have the ability to prove the debt when it filed the collection; rather, plaintiff claims that defendant filed the collection action with no intent to ever prosecute the case, and

7

without an intent to validate the underlying debt. Plaintiff's complaint alleges a business operation by which defendants purchase a debt without receiving the underlying documents that created the debt and file suit before properly reviewing any documents received, basing their suits on affidavits that are signed without any personal knowledge of whether a consumer incurred a debt [Doc. 1 ¶¶ 18-22]. From this, defendants seek to obtain default judgments in the majority of consumers, and when their actions are challenged, defendants dismiss the suit. This business operation, by its nature, plaintiff argues in response to defendants' motion, is deceptive and misleading, because it misrepresents to the least sophisticated consumer that, as a debt collector, defendants intend to fully prosecute their collection action and validate the underlying debt, when in fact they do not. It also leads the least sophisticated consumer to believe that defendants possess more than enough evidence to be successful in the collection action. In support of this argument, plaintiff relies heavily upon *Samuels v. Midland Funding, LLC*, 921 F. Supp. 2d 1321 (S.D. Ala. 2013).

In *Samuels*, the court addressed a similar theory as the one proposed in this case in the context of a defendant's motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *Id.* at 1323-24. Plaintiff's complaint alleged that the defendant's practice was to file collection suits in state court with no intention of proving its case, obtaining default judgment or settlement in 90% of the lawsuits it filed and, in the other 10% of cases, defendant would appear at trial through counsel but without any witnesses or competent evidence. *Id.* The *Samuels* plaintiff had challenged

8

the defendant's complaint, which did not contain a supporting affidavit, and appeared at trial with counsel, while defendant's attorney appeared but with no evidence to prove its case. *Id.* at 1324. This prompted judgment in favor of plaintiff, who then filed a FDCPA claim against defendant. In denying defendant's motion, the *Samuels* court distinguished plaintiff's theory from those cases where plaintiffs alleged that defendant had not validated the debt at the time of filing suit, and held that "the defendant has not demonstrated that no such cause of action exists." *Id.* at 1331. In doing so, however, the district court did not rule on whether the FDCPA provided the plaintiff a cause of action on the theory of filing a lawsuit without intention to collect, and did not rule on the merits of plaintiff's arguments. *Id.* Similarly, without ruling on the merits of plaintiff's claims, the court in *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293 (N.D. Ga. 2010), denied a motion to dismiss when plaintiff advanced a similar theory, finding that plaintiff had stated a claim for relief, *id.* at 1303.

The Court concludes that plaintiff's reliance on these cases is misplaced. In both *Samuels* and *Kuria*, the respective plaintiffs' theories and factual allegations were entitled to great deference, as a court examining a motion under Rules 12(b) and 12(c) must accept all well-pled factual allegations as true, and to defeat a motion only requires "direct or inferential allegations respecting all the material elements under some viable legal theory." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008); *see, e.g. Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988). In order to defeat a well-pled motion for summary judgment under Rule 56 of the Federal

9

Rules of Civil Procedure, however, the non-moving party "must point to evidence in the record upon which a reasonable finder of fact could find in its favor." *Anderson*, 477 U.S. at 248. While the Court is obligated to draw reasonable inferences in plaintiff's favor, the Court is not required to accept inferences based on unsupported factual assertions, as plaintiff "is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis*, 778 F. Supp. at 1423.

In this case, plaintiff has failed to provide a factual basis for its assertion of defendants' alleged scheme that would entitle him to a trial. There is no evidence in the record of defendants' intent to hire Buffaloe to file suit on its behalf without the intention of pursuing that action, nor is there any evidence of this being a pattern and practice of defendants. Plaintiff's response to defendants' motion in large part reiterates the allegations in the complaint without setting forth evidence to substantiate those allegations. In contrast to the *Samuels* case, defendants in this case provided evidence in connection with the filing of their collection suit in the form of the sworn affidavit, evidencing their intent to pursue the action in order to collect on the debt. *Cf. Samuels*, 921 F. Supp.2d at 1328 (noting that there was no indication that defendant attached an affidavit so as to provide evidence reflecting existence and amount of debt). While plaintiff takes issue with the level of personal knowledge Griffin had in making the affidavit, plaintiff has not presented evidence that is contrary to the conclusions set forth in the affidavit as to the amount of debt owed. In addition, defendants have presented an account document from the underlying creditor, Citibank, showing a balance that is

10

consistent with defendants' records and later stated in the civil warrant and sworn affidavit [*See* Doc. 17-1]. During his deposition testimony, plaintiff admitted that the amount stated in defendants' documents matched the balance from the underlying account, and similarly admitted that he owed a debt and that the amount stated on the civil warrant appeared to be correct [*Id.* at 8]. Plaintiff attributed his failure to pay the amount due to "financial difficulties," while acknowledging that he understood his failure to pay would result in the debt being sent into collections [*Id.*]. Similarly, the Court concludes that the mere fact defendants dismissed their collection action against plaintiff is insufficient to create a genuine issue of material fact, based upon the record in this case. *See, e.g. Collins v. Portfolio Recovery Assocs.*, No. 2:12-CV-138, 14 (E.D. Tenn. June 7, 2013) (Mattice, J.) (noting that the "facts contained in the record do not support Plaintiff's inference – namely, that the dismissal of the lawsuit some seven months after it was filed in and of itself demonstrates that Defendants never intended to pursue the action").

The Court similarly concludes that plaintiff's arguments regarding the amounts defendants sought to collect in the state action do not create a genuine issue of material fact as to whether defendants violated §§ 1692e, 1692f, or the related subsections thereunder. Plaintiff takes issue with the fact that in the civil warrant, defendants characterized the amount owed as "the principal amount of $5,387.93, plus pre and post judgment interest accruing at the statutory rate of 10% and court costs of this cause of $181.50" [Doc. 1-1 at 1], while the sworn affidavit only states that the amount defendants

11

have a right to collect is "$5,387.93 plus any additional accrued interest" [*Id.* at 3]. The Court finds this argument is meritless, as the affidavit clearly states the amount due, including the possibility of interest, and was used to validate the debt on which the civil warrant is seeking to collect. The failure to include the court cost amount would not be misleading, nor would it be an attempt to collect on an amount not authorized by law, given that court costs are authorized by statute [*See* Doc. 36-3 ¶ 5 (citing Tenn. Code Ann. § 47-14-121)]. For similar reasons, the Court finds plaintiff's argument that defendant failed to show evidence of an agreement permitting the 10% interest rate unavailing in light of the statute which provides for this rate [*Id.* ¶ 6 (citing Tenn. Code Ann. §§ 47-14-123, 47-14-121)]. *See, e.g. Collins*, No. 2:12-CV-138 at 14. The two statements plaintiff offers are not inconsistent with one another and would not be deceptive to the least sophisticated consumer. Accordingly, summary judgment is appropriate as to plaintiff's claims arising from the filing of the civil warrant and sworn affidavit, under 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(5), 1692e(8), e(10), 1692f, and 1692f(1).

## 2. Licensing Requirements

LVNV also moves for summary judgment on plaintiff's claims regarding LVNV's failure to obtain a license to be a debt collector under Tennessee law, in a violation of 15 U.S.C. §§ 1692e(5), 1692f, and 1692(f)(1). LVNV contends that it was not engaged in collection activity in this case because it hired Buffaloe, which is exempt from licensing requirements, to carry out its collection efforts on plaintiff's debt. Citing to an opinion

issued by the Tennessee Collection Service Board, LVNV asserts that because it assigns all of its collection activity to a licensed collection agency and/or law firm, a license is not necessary under Tennessee law.

The Tennessee Collection Service Act provides that "[n]o person shall commence, conduct or operate any collection service business in this state unless the person holds a valid collection service license issued by the board under [the Tennessee Collection Service Act] or prior state law." Tenn. Code Ann. § 62-20-105(a). The law provides an exception, however, for attorneys and those entities who are collecting solely on those debts incurred in the normal course of business. Tenn. Code Ann. § 62-20-103. A "collection service" is defined as follows:

> any person that engages in, or attempts to engage in, the collection of delinquent accounts, bills or other forms of indebtedness irrespective of whether the person engaging in or attempting to engage in collection activity has received the indebtedness by assignment or whether the indebtedness was purchased by the person engaging in, or attempting to engage in, the collection activity."

Tenn. Code Ann. § 62-20-102(3). This Court has held that the failure to obtain the necessary licensing could give rise to a FDCPA violation for threatening and or taking legal action which it was not authorized to do. *See Smith v. LVNV Funding, LLC*, 894 F. Supp. 2d 1045, 1049 (E.D. Tenn. 2012) (Greer, J.).

In January 2009, the Tennessee Collection Service Board issued a Clarification Statement recognizing an exemption to the general definition of "collection service." The Board has been delegated authority to promulgate rules concerning the conduct of

13

collection service businesses.  Tenn. Code Ann. § 62-20-115(b)(1).  The Clarification

Statement reads as follows:

> It is currently the opinion of the Tennessee Collection Service Board that entities who purchase judgments or other forms of indebtedness will be deemed a "collection service" if they collect or attempt to collect the debt or judgment subsequent to their purchase of the debt or judgment. However, *entities who purchase debt or judgments in the manner described above but who do not collect or attempt to collect the purchased debt or judgment, but rather assign collection activity relative to the purchased debt to a licensed collection agency or a licensed attorney or law firm shall not be deemed to be a "collection service."*

*Robinson v. Sherman Fin. Grp., LLC*, No. 2:12-CV-30, 2013 WL 3968446, at *10 (E.D.

Tenn. July 31, 2013) (Collier, J.) (block quotation omitted).[3]  As recently as May 2012,

the Court notes, the Board reaffirmed the statement at one of its meetings and concluded

that the statement "would currently stand as written" [Doc. 17-1].

In this case, there is no dispute that LVNV is a debt collector.  LVNV has

established that, through its servicer Resurgent, collection activities are assigned to

Buffaloe.  It is undisputed that Buffaloe conducted all collection activity related to

plaintiff's account in this case, including the sending of collection letters, and ultimately

filing suit on LVNV's behalf.  The record indicates that LVNV would not be a

"collection service" under the Clarification Statement by the Board, and would not be

---

[3] While the parties devote a significant portion of their respective briefs arguing whether the Clarification is a formal rule promulgated under the statute, or merely guidance in the interpretation thereof, the Court notes that it does not appear the Board was acting under its rulemaking authority, and that the Statement merely represents the Board's collective opinion. This, however, does not diminish the Court's ability to consider the persuasiveness of the Clarification Statement, particularly in light of the respect and deference given by courts to the interpretation of statutes by administrative agencies.  *See Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997).

14

required to obtain a collection service license. *See, e.g. Robinson*, 2013 WL 3968446 at

*10 (reaching the same conclusion based upon analysis of Clarification Statement).[4] The

Court concludes, therefore, that plaintiff has not shown there is a genuine issue of

material fact and defendant is entitled to summary judgment on plaintiff's claims under

15 U.S.C. §§ 1692e(5), 1692f, and 1692(f)(1).[5]

### 3. Civil Warrant and Sworn Affidavit

Defendants also seek summary judgment on plaintiff's claims under 15 U.S.C. §

1692e(11) and 15 U.S.C. §§ 1692g(a)(3)-(5), pertaining to the disclosures debt collectors

are required to make in their communications to debtors. Defendants argue that neither

LVNV or Buffaloe were required to make the necessary FDCPA disclosures in the civil

warrant or sworn affidavit because both were part of a "formal pleading" exempt from

the requirements of 15 U.S.C. § 1692e(11) and 15 U.S.C. §§ 1692g(a)(3)-(5). Plaintiff,

---

[4] Defendants submitted a supplemental brief pursuant to E.D. Tenn. L.R. 7.1(d), informing the Court of a recently released order denying a motion for reconsideration in *Robinson*, and asking the Court to take judicial notice of the court's decision pursuant to Rule 201 of the Federal Rules of Evidence [Doc. 55]. While the Court recognizes its discretion to take judicial notice of that order, the Court will decline to do so, as that case is neither controlling nor dispositive of the matter before the Court. *Cf. United States ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992) (noting that lower court proceedings were "directly" related and dispositive of the current action and taking judicial notice of the final judgment of that court).

[5] The Court notes that this conclusion varies from the Court's previous decision in *Lilly v. RAB Performance Recoveries, LLC*, No. 2:12-CV-364, 2013 WL 38344008 (E.D. Tenn. Aug. 2013). In that case, however, the Court was not made aware of the existence or import of the Clarification Statement, nor was its significance at issue before the Court until after the Court issued its Memorandum Opinion and Order on summary judgment. It was later discussed by one of the defendants in that case in the context of a motion for reconsideration under Rule 59, which requires a different standard of analysis than the motion for summary judgment presently before the Court. *See Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006) (setting forth standard for relief under Rule 59).

in his memorandum in support of his motion for summary judgment [Doc. 23], argues that neither qualifies as a formal pleading under the statute. In addition, plaintiff argues that that the civil warrant and sworn affidavit were the initial communications to defendants, so that defendants had an obligation to provide additional disclosures, which defendants failed to provide.

Initially, the Court notes that plaintiff has not created a genuine issue of material fact as to whether the civil warrant and affidavit were the initial communication sent to plaintiff, which is necessary for finding a violation under 15 U.S.C. § 1692g(a). Defendants argue that, as its normal procedure, Buffaloe, on behalf of Resurgent and LVNV sent the proper notice and disclosures in the first communication sent to plaintiff. In support of this contention, defendants submitted the affidavit of Joel Vallejo [Doc. 19], who, in his capacity as representative for Buffaloe, testified that on or about June 29, 2010, a letter was sent by Buffaloe stating the name of the creditor, the amount owed, and the account number [*Id.* ¶ 3]. Although Vallejo testifies that, at the time the June 2010 letter was sent, Buffaloe did not yet have a policy of scanning outgoing mail into their system, the records maintained in the ordinary course of business show that the letter contained the requisite disclosures [*Id.* ¶ 6]. Vallejo's affidavit includes the language which is included in every collection letter Buffaloe sends, including that the debtor has thirty days to dispute the validity of the debt before it is presumed valid, and the other requirements set forth in 15 U.S.C. § 1692g(a) [*Id.* ¶ 4]. Without any argument or evidence contrary to this affidavit, the Court concludes that summary judgment is proper

16

as to plaintiff's claim under 15 U.S.C. § 1692g and will turn to plaintiff's claim under 15

U.S.C. § 1692e(11).

Section 1692e(11) makes the following a violation of the FDCPA:

> [t]he failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, *except that this paragraph shall not apply to a formal pleading made in connection with a legal action.*

15 U.S.C. § 1692e(11) (emphasis added).

Defendants thus argue that the civil warrant and attached sworn affidavit fall under

the "formal pleading" exception set forth in § 1692e(11), and the Court agrees. The civil

warrant in this case functions as the complaint would in cases beginning in circuit court,

as it is the manner in which an action is commenced in a general sessions court. Tenn.

Code Ann. § 16-15-716. In addition, the sworn affidavit attached to the civil warrant

serves as the way to conclusively establish the amount owed. *See* Tenn. Code Ann. § 24-

5-107. As has been previously stated, "[a] complaint on a sworn account must be

supported by an affidavit proving the existence and correctness of the account." *AMC

Demolition Specialists, Inc. v. Bechtel Jacobs Co., LLC*, 3:04-CV-466, 2006 WL

2792401, at *10 (E.D. Tenn. Sept. 26, 2006) (Shirley, M.J.) (dismissing claim on sworn

account when complaint did not contain a sworn affidavit). Although that case concerned

a complaint, rather than civil warrant, § 24-5-107 refers to all actions, making the sworn

affidavit a critical part of the civil warrant, as it serves as conclusive proof of a debt. *See,*

*e.g. Lilly v. Performance Recoveries, LLC*, 2:12-CV-264, 2013 WL 384008, at *7 (E.D. Tenn. Jul. 23, 2013) (noting the same).

Plaintiff argues that the Court should construe the "formal pleading" exception narrowly, and argues that, in order to be successful, defendant would have to show that every document attached to a complaint constitutes a formal pleading. As this court noted in *Lilly*, however, the cases plaintiff continues to rely upon are inapposite to the facts of this case. *Id.* In *Hauk v. LVNV Funding*, 749 F. Supp. 2d 366-67 (D. Md. 2010), the Court held that interrogatories served within the course of litigation are subject to the FDCPA, noting that "Congress did not intend for all documents filed in connection with a lawsuit to fall within the formal pleading exceptions," *id.* Plaintiff also cites to *Nikkel v. Wakefield & Assocs., Inc.*, No. 10-CV-02411-PAB-CBS, 2011 WL 4479109 (D. Colo. Sept. 26, 2011), a case involving a cover letter accompanying a courtesy copy of a complaint. Neither case, however, concerned a sworn, notarized affidavit used as conclusive proof of a debt sought in a civil warrant.

In addition to these cases, plaintiff cites to *Collins*, a non-binding decision in which the court rejected defendant's argument that a civil warrant, filed as an initial communication, was a formal pleading so as to be exempt from the disclosure requirements under the FDCPA before proceeding to dismiss plaintiff's 15 U.S.C. § 1692e(11) claim for failure to state a claim. No. 2:12-CV-138 at 15-16. In so finding, the *Collins* court referred to two unpublished decisions from the Tennessee Court of

18

Appeals,[6] both of which concerned appeals from general sessions courts, and infer that civil warrants are not formal pleadings for the purposes of an appeal of a general sessions court decision. The Court, having reviewed *Collins* as well the non-FDCPA Tennessee cases referenced by the *Collins* court, is not persuaded that a civil warrant and attached sworn affidavit, intended as conclusive proof of the amount owed, do not qualify as a "formal pleading" under the statute. Nor is the Court persuaded by plaintiff's references to commentary from industry writers, as neither of the articles cited concern the question of whether a document which serves the purpose of the complaint may qualify as a formal pleading. Thus, the Court concludes that plaintiff has not shown a genuine issue of material fact exists as to her claim brought under 15 U.S.C. §§ 1692e(11).

### 4. Vicarious Liability

LVNV also moves for summary judgment on plaintiff's claim that it is responsible for the acts and omissions of Buffaloe under a *respondeat superior* theory of liability.[7] LVNV argues that there is no proof of an agency relationship that is necessary to establish vicarious liability. Plaintiff argues that an agency relationship may exist from the fact that LVNV utilized Buffaloe, as its attorney, to carry out collection efforts.

---

[6] Although the Court recognizes the persuasive authority of these cases, these cases are not directly applicable to this case and their holdings do not constitute on-point precedent which the Court must follow in interpreting the federal statute before it. *See Lukas v. McPeak*, 730 F.3d 635(6th Cir. 2013) (describing manner in which courts consider state court authority in ruling upon questions of state law).

[7] While defendant does not appear to address the argument of *respondeat superior* liability in its memorandum in support of its motion for summary judgment, plaintiff raised this claim in his response and defendants address the argument in their reply brief, so that the Court finds it appropriate to address these arguments.

19

In *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6th Cir. 1996), a company that had been assigned a car dealership's installment contracts hired an attorney to collect against individuals who had defaulted on their payments. During his collection efforts, the attorney violated the FDCPA, and the individuals later filed suit against the attorney as well as the company, who owned the debt. After determining that the defendant company did not meet the definition of "debt collector" under § 1692a, the Sixth Circuit refused to hold the company vicariously liable for the actions of its attorney, holding that it would not "accord with the intent of Congress . . . for a company that is *not* a debt collector to be held vicariously for a collection suit filing that violates the [FDCPA] only because the filing attorney is a debt collector." *Id.* at 108. In reaching this holding, the court distinguished the case from *Fox v. Citicorp Credit Services*, 15 F.3d 1507 (9th Cir. 1994), a case where the Ninth Circuit held that a co-defendant was held vicariously liable for the actions of its attorneys because both could be classified as "debt collectors" for purposes of the FDCPA. *See Wadlington*, 76 F.3d at 108 (citing approvingly to *Fox* for the idea that if "[defendant] was a debt collector, it would appear to accord with the intent of Congress for [defendant] to be held directly liable to a consumer whom [defendant] sued in the wrong judicial district"); *see also Pollice v. Nat'l Tax Funding, LP*, 225 F.3d 379, 404-05 (3d Cir. 2000) (holding that entity "which itself meets the definition of 'debt collector'" could be held vicariously liable for other debt collector acting in agency capacity and noting that debt collectors "should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf").

20

In light of the holdings of *Wadlington* and *Fox*, various district courts have held debt collectors vicariously liable for their agents' FDCPA violations. *See, e.g., Suquilanda v. Cohen & Slamowitz, LLP*, 10 Civ. 5868, 2011 WL 4344044, at *4 (S.D.N.Y. Sept. 8, 2011) ("Courts have concluded that where the principal is a 'debt collector,' the principal may be liable for its agent's FDCPA violations."); *see also Edwards v. Velocity Inv.*, No. 1:10 CV 1798, 2011 WL 4007394, at *8 (N.D. Ohio Sept. 8, 2011) (noting that because defendant was a debt collector, it could be vicariously liable for actions of attorney debt collector in denying defendant's motion for summary judgment); *DeFazio v. Leading Edge Recovery Solutions*, No. 10-cv-02945, 2010 WL 5146765, at *3 (D.N.J. Dec. 13, 2010) (same). In so holding, courts have focused on the fact that "to find otherwise would result in companies shielding themselves from liability by hiring attorneys to avoid the requirements of the FDCPA." *Beach v. LVLN Funding*, No. 12-CV-778, 2013 WL 1878938, at *2 (E.D. Wis. May, 3, 2013); *see also Fox*, 15 F.3d at 1516 ("In order to give reasonable effect to section 1692j, we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken.").

As noted by the court in *Okyere v. Palisades Collection, LLC*, --- F. Supp. 2d ---, 2013 WL 1173992 (S.D.N.Y. 2013), "'traditional vicarious liability rules' ordinarily make principals liable for acts of their agents merely when the agents act 'in the scope of their authority,'" *id.* at *7 (quoting *Meyer v. Holley*, 537 U.S. 280, 285 (2003)). Further, "the nature of an attorney-client relationship itself reflects that the client has the power to

'control' its agent in material respects if the client wishes to do so." *Id. But see Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011) (quoting *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) ("Under general principles of agency—which form the basis of vicarious liability under the FDCPA—to be liable for the actions of another, the 'principal' must exercise control over the conduct or activities of the 'agent.'") (citation omitted)).

In this case, it is undisputed that LVNV hired co-defendant Buffaloe to carry out debt collection efforts against plaintiff. Buffaloe appears as attorney for LVNV n the civil warrant filed in Knox County General Sessions Court, with LVNV acting as plaintiff and beneficiary of Buffaloe's efforts. LVNV's arguments about the need for proof of an agency relationship overlook the nature of the relationship between LVNV, the client, and its attorneys, the Buffaloe law firm. The Court concludes that LVNV may be held liable for any of Buffaloe's FDCPA violations, making summary judgment improper.

**B.    Plaintiff's Amended Motion for Partial Summary Judgment [Doc. 22]**

In plaintiff's Amended Motion for Partial Summary Judgment [Doc. 22], plaintiff moves for summary judgment on his claims that defendant LVNV failed to obtain a license, that defendants failed to make the proper disclosures in their communications with plaintiff, and that defendants filed their collection suit in the wrong venue. As to the first two claims, because the Court has concluded that LVNV was not required to obtain a license and that the civil warrant and sworn affidavit are exempt from the disclosure

requirements, the Court cannot grant plaintiff the relief requested, and plaintiff's motion will be denied in both respects.

The only remaining claim which has not already been addressed by the Court is plaintiff's claim for a violation of 15 U.S.C. § 1692i(a)(2), which requires a debt collector to bring any legal action in the judicial district where the consumer debtor signed the contract being sued upon or where the debtor resides. Plaintiff argues that the civil warrant issued in Knox County lists plaintiff's residence as Sevier County, and given that there is no indication that the contract creating the debt was signed in Knox County, defendants have violated this provision of the FDCPA. Defendants, while acknowledging that the civil warrant may have been filed in the wrong county, nonetheless argue that they had a good faith belief as to plaintiff's address based upon credit reports obtained in an effort to verify the defendant's address, so that any mistake is subject to the bona fide error defense set forth in 15 U.S.C. § 1692k(c).

Section 1692k(c) provides that a "debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." The burden, then, is on the debt collector asserting the defense to "prove by a preponderance of the evidence that: (1) the violation was unintentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Jerman v. Carlisle, McNellie, Rini, Kramer*

23

& *Ulrich, LPA*, 538 F.3d 469, 472 (6th Cir. 2008), *rev'd on other grounds*, 559 U.S. 573 (2012). The debt collector, in proving the eligibility of the defense, must only show "that the violation was unintentional," *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (1998), not that the underlying action was unintentional, *id.*

In support of their bona fide error defense, defendants submitted another affidavit from Vallejo [Doc. 26-2]. Vallejo testified that upon assignment of the debt collection, Buffaloe ran credit reports on plaintiff to confirm his address [*Id.* ¶ 5]. Buffaloe then used this address to prepare a civil warrant which was initially filed in October 2010. Upon learning that the civil warrant was undeliverable, Buffaloe obtained the results of a skip trace search for plaintiff on June 28, 2011, through which Buffaloe obtained the Seymour address and amended the civil warrant [*Id.* ¶ 9]. Vallejo testified that when Buffaloe filed the original civil warrant, it was relying upon what is "normally very reliable credit reporting information," which led to the belief that plaintiff resided in Knox County [*Id.* ¶ 10].

Based upon this affidavit, the Court concludes there is a genuine issue of material fact as to the availability of the bona fide error defense. Vallejo described the process by which Buffaloe validates debtor addresses prior to filing suit, that is, the use of credit reporting services, testified that this process was utilized as to plaintiff, but that there was an error with the address within the credit reporting service. Plaintiff has produced no evidence that the act of filing in the wrong venue was intentional or done in bad faith, and Vallejo's affidavit purports to show that the error was an unintentional mistake. The

Court, in denying plaintiff's motion, makes no determination on whether defendant can carry its burden of proving the availability of the bona fide error at trial nor assesses the weight and credibility of Vallejo's affidavit. *Anderson*, 477 U.S. at 249. Rather, the Court merely concludes that the availability of the defense as to plaintiff's § 1692i(a)(2) claim is a proper question for the jury.

## IV. Conclusion

For the reasons stated herein, defendants' motion for summary judgment [Doc. 20] is hereby **GRANTED in part** and **DENIED in part** to the extent that plaintiff's claims will be dismissed and judgment entered in favor of defendants with the exception of plaintiff's claim for a violation of 15 U.S.C. § 1692i(a)(2). Plaintiff's amended motion for summary judgment [Doc. 22] is hereby **DENIED**.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE